## UNITED STATES COURT OF INTERNATIONAL TRADE
## NEW YORK, NEW YORK

SOUTHERNCARLSON, INC., BUILDING
MATERIAL DISTRIBUTORS, INC.,
CONTINENTAL MATERIALS, INC., WEXCELL,
LLC, FANACO FASTENERS LLC, S.T.O.
INDUSTRIES, INC., PT GLOBAL, INC.,
BUILDING PRODUCTS OF AMERICA, LLC,
KRATOS BUILDING PRODUCTS, INC., and DC
INTERNATIONAL, INC.,

                **Plaintiffs,**

    **v.**

UNITED STATES OF AMERICA, DONALD J.
TRUMP, IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNITED STATES; WILBUR
L. ROSS, JR., IN HIS OFFICIAL CAPACITY AS
UNITED STATES SECRETARY OF COMMERCE;
UNITED STATES DEPARTMENT OF
COMMERCE; MARK A. MORGAN, IN HIS
OFFICIAL CAPACITY AS ACTING
COMMISSIONER, UNITED STATES CUSTOMS
AND BORDER PROTECTION; and UNITED
STATE CUSTOMS AND BORDER PROTECTION

                **Defendants.**

Court No. 20-00056

## **COMPLAINT**

    Plaintiffs SouthernCarlson, Inc., Building Material Distributors, Inc., Continental

Materials, Inc., WEXCELL, LLC, Fanaco Fasteners LLC, S.T.O. Industries, Inc., PT Global,

Inc., Building Products of America, LLC, Kratos Building Products, Inc., and DC International,

Inc. ("Plaintiffs"), by and through the undersigned counsel, bring this civil action and allege as follows:

## INTRODUCTION

1.      On January 24, 2020, President Donald J. Trump issued Proclamation 9980 imposing a 25 percent *ad valorem* tariff on imports of so-called "derivative" steel products and a 10 percent *ad valorem* tariff on imports of "derivative" aluminum products, purportedly pursuant to his power under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862) (the "Section 232 statute" or "Section 232"), to protect the national security of the United States. *See* 85 Fed. Reg. 5281 (Jan. 29, 2020) ("Proclamation 9980"), and the accompanying Annex I and II.

2.      Plaintiffs are each a United States importer and/or distributor of various derivative steel articlces affected by Presidential Proclamation No. 9980, titled Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States, 85 Fed. Reg. 5281 (Jan. 29, 2020), and the accompanying Annex II ("Proclamation 9980).

3.      Section 232 expressly limits the President's authority to impose tariffs and establishes clear procedural requirements.  Before the President may do so, the Secretary of the U.S. Department of Commerce (the "Secretary" or "Commerce") must first conduct an investigation into whether imports of the articles at issue threaten to impair the national security. Within 270 days of beginning the investigation, the Secretary must submit to the President, and publish in the *Federal Register,* a report determining whether the article under investigation is being imported into the United States "in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. § 1862(b)(3)(A) (2018).  Within 90 days of

receiving a report that such imports do pose a threat, the President must decide whether he agrees and, if so, the nature and duration of any remedial action. *Id.* § 1862(c)(1)(A)(ii).

4.     If the President concurs with Commerce's report and determines to take action, the President is statutorily required to implement such action within 15 days of his decision. *See id.* § 1862(c)(1)(B). These deadlines are clearly stated, unambiguous, and unequivocal. See Transpacific Steel LLC v. United States, No. 19-00009, 2019 WL 6124906, at *4 (Ct. Int'l Trade Nov. 15, 2019) ("The statute's clear and unambiguous steps—of investigation, consultation, report, consideration, and action—require timely action from the Secretary of Commerce and the President.").

5.     None of the statutory requirements were met when Proclamation 9980 was issued. Thus, Proclamation No. 9980 is unlawful and unconstitutional.

6.     In 2017, the Secretary investigated the effects of imports of certain steel articles. The Secretary issued a report to the President on January 11, 2018 explaining the findings of the investigation regarding the effect of such imports on the national security.  U.S. Department of Commerce, Bureau of Industry and Security, Office of Technology Evaluation, THE EFFECT OF IMPORTS OF STEEL ON THE NATIONAL SECURITY: AN INVESTIGATION CONDUCTED UNDER SECTION 232 OF THE TRADE EXPANSION ACT OF 1962, AS AMENDED (Jan. 11, 2018) ("Steel Report").

7.     Similarly, the Secretary investigated the effects of certain imports of aluminum articles. The Secretary issued a report to the President on January 17, 2018 explaining the findings of the investigation regarding the effect of such imports on the national security.  U.S. Department of Commerce, Bureau of Industry and Security, Office of Technology Evaluation, THE EFFECT OF IMPORTS OF ALUMINUM ON THE NATIONAL SECURITY: AN

3

INVESTIGATION CONDUCTED UNDER SECTION 232 OF THE TRADE EXPANSION
ACT OF 1962, AS AMENDED (Jan. 17, 2018) ("Aluminum Report").

8.      Neither of the investigations in 2017 (and the tariffs subsequently imposed by the
President pursuant to those investigations) covered any of the derivative articles of steel and
aluminum covered by Proclamation 9980. Notwithstanding, Proclamation 9980 would violate the
deadlines imposed by Section 232.

9.      Proclamation 9980 is unlawful and unconstitutional for the followings reasons:

    a.   The imposition of duties in Proclamation 9980 is procedurally deficient under the
plain terms of the statute and regulations because Commerce failed to provide
reasonable notice to Plaintiffs nor held any public hearings for interested parties
to present relevant information and to be heard.  Commerce violated the
regulations that set forth detailed procedures for the conduct of an investigation
under Section 232.  *See* 15 C.F.R. Part 705 (2019).  Commerce followed none of
the regulations in providing its assessment to the President to impose an
additional 25 percent duty on derivative steel articles.  In so doing, Commerce
violated the rulemaking provisions of the Administrative Procedures Act.

    b.   The imposition of duties in Proclamation 9980 violates the statutory procedural
requirements of the Section 232 statute and the deadlines imposed thereunder.
Proclamation 9980 was announced 744 days after the President received the Steel
Report and 640 days after he was required to implement any action based on the
Steel Report.  Similarly, Proclamation 9980 was announced 738 days after the
President received the Aluminum Report and 634 days after he was required to
implement any action based on the Aluminum Report.

4

c.  In making "assessments, "determinations, and by providing "information" to the President identifying specific codes of the Harmonized Tariff Schedule of the United States ("HTSUS") for additional national security duties, the Secretary of Commerce violated all of the statutory provisions of Section 232 of the Trade Expansion Act of 1962.

d.  The imposition of duties in Proclamation 9980 is procedurally deficient and was issued contrary to the plain terms of the Section 232 statute, because Commerce denied Plaintiffs and similarly-situated parties reasonable notice to present information and advice relevant to the investigation and held no public hearings. By failing to provide for Plaintiffs' participation prior to the imposition of tariffs, Defendants denied Plaintiffs equal protection of the laws as guaranteed by the Fifth Amendment's Due Process clause.  The President's issuance of Proclamation 9980 without any notice to affected importers and subsequent failure to provide any administrative process for interested parties to comment on the impact of such duties constitutes a deprivation of the Fifth Amendment due process rights.

e.  Finally, Section 232 is an unconstitutional delegation of legislative authority from Congress to the Executive Branch. In particular, Congress improperly transferred its Congressional authority "[t]o lay and collect [t]axes, [d]uties, [i]mposts and [e]xcises," U.S. CONST. art. 1, § 8, cl. 1., to the President without setting forth an intelligible limited principle.  Such an improper delegation of power violates the U.S. Constitution and separation of powers doctrine which mandate that Congress makes law.

## JURISDICTION

10.    This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(2), (4), the

Administrative Procedure Act, 5 U.S.C. §§ 702, 704, 706, and 28 U.S.C. § 2631(i).

11.    Section 1581(i)(2), (4) provide:

{T}he Court of International Trade shall have exclusive jurisdiction of any civil action
commenced against the United States, its agencies, or its officers, that arises out of any
law of the United States providing for— . . .
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other
than the raising of revenue; . . . or

(4) administration and enforcement with respect to the matters referred to in paragraphs
(1)-(3) of this subsection and subsections (a)-(h) of this section.

12.    Section 232 of the Trade Expansion Act of 1962 is a law, which provides for

"tariffs, duties fees, or other taxes on the importation of merchandise for reasons other than the

raising of revenue," as well as for "administration and enforcement with respect to" such tariffs,

duties, and fees.  Accordingly, this matter arises under 28 U.S.C. § 1581(i)(2), (4).

13.    The Department of Commerce is a federal agency, and in his official capacity,

Secretary Wilbur Ross provided "assessments" to the President leading to the imposition of

duties in imports of derivative steel products in Proclamation 9980.  Plaintiffs challenge the

imposition of duties in Proclamation 9908, which will generate duties "on the importation of

merchandise for reasons other than the raising of revenue." Thus, this action arises out of law

described in 28 U.S.C. § 1581(i)(2).

14.    The U.S. Customs and Border Protection ("CBP") is a federal agency, and in his

official capacity, Acting Commissioner Mark A. Morgan will enforce Proclamation 9980 by

requiring additional import duties to be paid by importers of record for covered articles entering

the United States on or after February 8, 2020.  Accordingly, this Court has jurisdiction pursuant

to 28 U.S.C. § 1581(i)(4) because the implementation of duties under Section 232 constitutes "administration and enforcement" of such duties.

15.     The standard of review contained in the Administrative Procedure Act ("APA") is applicable to this action. 5 U.S.C. § 706.

16.     The APA provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; see 5 U.S.C. §§ 704, 706. 28 USC § 2631(i) specifies that "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)-(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5."

17.     The Secretary of Commerce failed to follow Commerce's regulations in providing "assessments" to the President, which were referenced in Proclamation 9980.  The "assessments" recommended changes to the HTSUS to impose a 25 percent duty on derivative steel products. Changes to the HTSUS constituted a rulemaking outside the bounds of the regulations.  The Court reviews such regulatory violations pursuant to the APA. 5 U.S.C. § 702.  Plaintiffs are adversely affected and aggrieved by the abrupt announcement of the imposition of additional duties on imports of steel derivative products and the Secretary of Commerce's failure to follow its regulations in providing "assessments" to the President referenced in Proclamation 9980.

18.     On January 24, 2020, the President abruptly announced the imposition of new tariffs on imports of steel and aluminum derivative products, effective February 8, 2020. However, the statutory deadline for the President to determine what action to take as a result of Commerce's Steel Report was April 19, 2018, 90 days after receipt of the Steel Report.  Because

the President has violated an explicit statutory mandate prescribed in 19 U.S.C. § 1862, this

Court has jurisdiction to hear Plaintiffs' challenge as established by case law.  *See Silfab Solar,*

*Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018) (citing *Motion Sys. Corp. v. Bush*,

437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc)).

19.     This Court has jurisdiction to hear constitutional challenges to laws affecting

imports and has recognized such jurisdiction under 28 U.S.C. § 1581(i)(2) and (i)(4) in other

challenges to Presidential and agency actions under Section 232 of the Trade Expansion Act of

1962.  *See, e.g. Am. Inst. For Int'l Steel, Inc. v. United States*, __ CIT ___, 376 F. Supp. 3d 1335

(Ct. Int'l Trade 2019).

20.     Additionally, 28 U.S.C. § 1581(a)-(h) cannot provide the relief that Plaintiffs

request because Proclamation 9980 does not constitute a determination reviewable thereunder by

this Court.  Accordingly, the Court has subject matter jurisdiction of this action under 28 U.S.C.

§ 1581(i) and may order the relief requested pursuant to 28 U.S.C. § 2643.

## PARTIES

21.     Plaintiff SouthernCarlson, Inc., ("SouthernCarlson") is a corporation organized

under the laws of the State of Delaware, with its principal place of business at 10840 Harney

Street, Omaha, NE 68154.  SouthernCarlson is a national distributor of fastening, packaging, and

construction supplies, and imports steel-derivative products (i.e. steel nails) affected by

Proclamation 9980.

22.     Plaintiff Building Material Distributors, Inc. ("BMD") is a corporation organized

under the laws of the State of California, with its principal place of business at 225 Elm Avenue,

Galt, CA 95632. BMD is a distributor of high-end construction materials for commercial and

residential projects in the United States, and imports steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

23.     Plaintiff Fanaco Fasteners LLC ("Fanaco") is a limited liability company organized under the laws of the State of Washington, with its principal place of business at 10600 231st Way, NE, Redmond, WA 98053. Fanaco is a distributor of a comprehensive line of fastening products, and imports steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

24.     Plaintiff S.T.O. Industries, Inc. ("S.T.O.") is a limited liability company organized under the laws of the State of Washington, with its principal place of business at 10600 231st Way, NE, Redmond, WA 98053. S.T.O. is a distributor of industrial supplies, and imports steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

25.     Plaintiff PT Global Inc. ("PT Global") is a corporation organized under the laws of the State of Washington, with its principal place of business at 3724 Lake Washington Blvd., NE, Kirkland WA 98053.  PT Global is an importer of steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

26.     Plaintiff Continental Materials, Inc. ("Continental") is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 1614 Old York Road, Abington, PA 19001.  Continental is a distributor specializing in nails and imports steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

27.     Plaintiff WEXCELL, LLC is a limited liability company organized under the laws of the State of Washington, with its principal place of business at 701 5th Avenue, #4200, Seattle, WA 98104.  WEXCELL, LLC is the importer of record of steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

9

28.    Plaintiff Building Products of America, LLC ("Building Products") is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 13032 SW 128 Street, Miami, FL 33186.  Building Products is a distributor of building materials, and imports steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

29.    Plaintiff Kratos Building Products, Inc.  ("Kratos") is a corporation organized under the laws of the State of Texas, with its principal place of business at 12901 Nicholson Road, Suite 330, Farmers Branch, TX 75234. Kratos is a distributor of products used in construction applications, and imports steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

30.    Plaintiff DC International, Inc. ("DCI") is a corporation organized under the laws of the State of Oregon, with its principal place of business at 5296 N Sabino Hills Drive, Tucson, AZ 85749. DCI is a distributor and importer of construction products, including steel-derivative products (i.e. steel nails) affected by Proclamation 9980.

31.    Defendant United States of America is the Federal Government of the United States of America.

32.    Defendant Donald J. Trump, is the President of the United States (the "President"), and is sued in his official capacity only.  The President issued Proclamation 9980 that is the subject of this Complaint.

33.    Defendant U.S. Department of Commerce is the executive agency of the U.S. Government responsible for conducting investigations under Section 232 and for providing findings and recommendations to the President.

34.     Defendant Wilbur L. Ross is the Secretary of the Department of Commerce, and is sued in his official capacity only.

35.     Defendant U.S. Customs and Border Protection is the executive agency of the U.S. Government responsible for administering and enforcing tariffs imposed under Section 232, including the tariffs at issue in this Complaint.

36.     Defendant Mark A. Morgan is the Acting Commissioner of the U.S. Customs and Border Protection, and is sued in his official capacity only.

## STANDING

37.     Plaintiffs have standing to bring this action pursuant to 28 U.S.C. § 2631(i), which states that "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h), may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5," which in turn states that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

38.     Plaintiffs have both constitutional and statutory standing to bring this action as U.S. importers and distributors of steel-derivative products identified in Annex II to Proclamation 9980.  Plaintiffs have suffered actual and irreparable harm by virtue of Defendants' unlawful acts in imposing *ad valorem* tariffs of 25 percent on certain derivative articles of steel identified in Proclamation 9980.

39.     As the importers of record of articles affected by Proclamation 9980, Plaintiffs are responsible for the payment of the unexpected *ad valorem* duties to CBP on derivative steel

products.  Thus, Plaintiffs have suffered actual and particularized injury that was the direct result of Defendants' unlawful action.

40.     Furthermore, Plaintiffs are United States importers organized under the laws of the United States, and with an interest in the national security of the United States.  Plaintiffs are therefore within the zone of interests to be protected or regulated by the Section 232 statute and its implementing regulations in 15 C.F.R. part 705.

41.     The irreparable harm suffered by Plaintiffs can be redressed by this Court. Specifically, Plaintiffs were denied an opportunity to comment on the measures imposed by the President and imports of items named in Annex II has resulted in the imposition of 25 percent duties on such items.  In the event that the Court does not enjoin the imposition of duties under Proclamation 9980, as importers of the products subject to such duties, Plaintiffs have standing to seek recovery of unlawfully collected duties.  Recovery of duties that were unlawfully collected do not constitute "monetary damages" foreclosed in cases based on the APA.  *See, e.g. Giorgio Foods, Inc. v. United States*, 804 F. Supp. 2d 1315, 1324 (Ct. Int'l Trade 2011) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988)).

42.     Therefore, Plaintiffs each qualify as a "person" adversely affected or aggrieved by an agency action within the meaning of 5 U.S.C. § 702, and as an "individual" aggrieved by regulatory and statutory violations, as well as by the unconstitutionality of Section 232 under 28 U.S.C. § 2631(i).

## TIMELINESS OF THIS ACTION

43.     An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. *See* 28 U.S.C. § 2636(i).  This action has been filed within two years of January 24, 2020, the date on which the President issued Proclamation 9980.

## STATEMENT OF FACTS

### Section 232 of the Trade Expansion Act of 1962

44.     Section 232, titled "Safeguarding National Security," authorizes the President "to take action to adjust imports of an article and its derivatives" upon "finding" that "an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii).

45.     A Section 232 action begins with a request for an investigation from the "head of any department or agency, upon application of an interested party" or on the Secretary's own motion. *Id.* § 1862(b)(1)(A).   Commerce's Bureau of Industry and Security ("BIS") conducts Section 232 investigations in accordance with the federal regulations codified at 15 C.F.R. part 705.

46.     The Section 232 statute requires the Secretary to conduct the investigation in consultation with the Secretary of the Department of Defense and other U.S. officials, as appropriate, to determine the effects of the specified imports on the national security. Specifically, the Secretary of Commerce shall "immediately provide notice to the Secretary of Defense of any investigation," shall "consult with the Secretary of Defense regarding the methodological and policy questions raised in any investigation," and if appropriate, shall "hold public hearings or otherwise afford interested parties an opportunity to present information and

advice." 19 U.S.C. § § 1862(b)(1)(B), (b)(2)(A)(iii). The "Secretary of Defense shall provide the

Secretary {of Commerce} an assessment of the defense requirements of any article" under

investigation. *Id.* § 1862(b)(2)(B).

47.    Under the statute, the Secretary has 270 days from the initiation of the

investigation to "submit to the President" and publish in the *Federal Register* "a report on the

findings of such investigation with respect to the effect of the importation of such article in such

quantities or under such circumstances upon the national security and, based on such findings,

the recommendations of the Secretary for action or inaction under th{e} section." *Id.* §

1862(b)(3)(A). "If the Secretary finds that such article is being imported into the United States in

such quantities or under such circumstances as to threaten to impair the national security, the

Secretary shall so advise the President in such report." *Id.*

48.    "Any portion of the report submitted by the Secretary {of Commerce} under {§

1862(b)(3)} (A) which does not contain classified information or proprietary information shall

be published in the Federal Register." *Id.* § 1862(b)(3)(B).

49.    Upon receipt of Commerce's report, the President has 90 days to "determine

whether the President concurs with the finding of the Secretary." *Id.* § 1862(c)(1)(A).

Conversely, if the Secretary of Commerce's report does not contain a finding that an article is

being imported into the United States in such quantities or under such circumstances as to

threaten to impair the national security, the President has neither a duty nor the authority to take

any action under Section 232. *See id.*

50.    If the President concurs with the Secretary of Commerce that imports of an article

into the United States threaten to impair the national security, the President must "determine the

nature and duration of the action that, in the judgment of the President, must be taken to adjust

14

the imports of the article and its derivatives so that such imports will not threaten to impair the national security." This determination must be made within 90 days of receipt of the Secretary of Commerce's report.  *Id.* § 1862(c)(1)(A)(ii).

51.    After making this determination, the President has 15 days to implement the action. *Id.* § 1862(c)(1)(B).

52.    Within 30 days after "the date on which the President makes any determinations," the President "shall submit to the Congress a written statement" explaining the reasons "why the President has decided to take action, or refused to take action." *Id*. § 1862(c)(2).

**Commerce's 2017 Investigation of Steel and Aluminum Articles Under Section 232**

53.    On April 19, 2017, Secretary of Commerce Wilbur Ross initiated an investigation under Section 232 into the effects of certain steel imports on the national security of the United States.

54.    As part of the investigation, the Secretary published a notice to invite written public comments and public testimony at a hearing on "imports of steel." *Notice Request for Public Comments and Public Hearing on Section 232 National Security Investigation of Imports of* Steel, 82 Fed. Reg. 19,205 (April 26, 2017) ("Notice"). The Notice stated that the Secretary was "particularly interested in comments and information…related to the importation of steel." *Id.* at 19,206.

55.    On January 11, 2018, BIS issued the Steel Report, which expressly stated that the scope of the investigation was limited to certain still mill products ("steel articles") described and classified in the Harmonized Tariff System under subheadings 720610 through 721650, 721699 through 730110, 730210, 730240 through 730290, and 730410 through 730690. *See* Steel Report

at 21 ("Product Scope of the Investigation"). None of these products encompassed derivative steel products such as Plaintiffs' imports of steel nails.

56.     In the Steel Report, Commerce adopted an expansive definition of "national security," to include not only "national defense," but also to "include{ } the general security and welfare of certain industries, beyond those necessary to satisfy national defense requirements, which are critical to minimum operations of the economy and government." Steel Report at 1, 13–15.

57.     Concluding that the U.S. domestic steel industry was in decline, Commerce further determined that "the present quantities and circumstance of steel imports are 'weakening our internal economy' and threaten to impair the national security as defined in Section 232." *Id.* at 5.  In its Steel Report, Commerce emphasized the threat of raw steel imports, as opposed to steel products individually, stated "U.S. steel production capacity has remained flat since 2001, while other steel producing nations have increased their production capacity…" *Id.* at 16.

58.     Commerce recommended in the Steel Report that the President take immediate action to adjust the level of steel imports through quotas or tariffs.  *Id.* at 58-61.  Commerce proposed three actions, among the recommendations a global 24 percent tariff on "all imported steel products." *Id.* at 59.

59.      On February 18, 2018, approximately one month after Commerce issued the Steel Report, the Secretary of Defense sent a letter to Commerce expressing its views on the recommendations contained in the *Steel Report*. The Secretary of Defense conveyed that in his view, "U.S. military requirements for steel and aluminum each only represent about three percent of U.S. production" and "{t}herefore, DoD does not believe that the findings in the reports {by Commerce} impact the ability of DoD programs to acquire the steel or aluminum necessary to

meet national defense requirements." Memorandum from Sec'y of Def. to Sec'y of Commerce re: Response to Steel and Aluminum Policy Recommendations (Feb. 18, 2018) ("Defense Memorandum") at 1 (attached as Exhibit 4). The Secretary of Defense also shared that the Department of Defense "continues to be concerned about the negative impact on our key allies" of "the recommended options within the reports." *Id.*

### The 2018 Section 232 Proclamations on Steel and Aluminum

60.     On March 8, 2018, the President issued Proclamations 9704 and 9705 pursuant to Section 232, which concurred with the Secretary's findings and announcing the President's determination to adjust the imports of aluminum and steel by imposing *ad valorem* tariffs of 10 and 25 percent, respectively.  *See* Proclamation No. 9705, Adjusting Imports of Steel Into the United States, 83 Fed. Reg. 11625 (Mar. 15, 2018).

61.     Neither steel nails nor any other derivative steel articles were listed in the annex of steel articles covered by the initial 2018 Section 232 action. Proclamation 9705 also made no reference to derivative articles of steel, or to the specific derivative articles of steel included in Proclamation 9980, including the steel nails imported by Plaintiffs.

### The 2020 Section 232 Proclamation 9980

62.     On January 24, 2020, nearly two years after the initial Proclamations imposing tariffs on steel and aluminum products, and without any prior notice, the President issued Proclamation 9980, imposing a 10 percent *ad valorem* tariff on U.S. imports of certain derivative products manufactured from aluminum and a 25 percent *ad valorem* tariff on U.S. imports of

certain derivative products manufactured from steel, effective February 8, 2020. 85 Fed. Reg. 5281 (Jan. 29, 2020) ("Proclamation 9980").

63.    Paragraph 1 of Proclamation 9980 states that its legal authority is based on the investigation conducted by Commerce in 2017, with reference to the Steel and Aluminum Reports issued in 2018, which did not include nails or any derivative steel or aluminum product.

64.    Proclamation 9980 states that further action under Section 232 is warranted because the Secretary of Commerce has "informed" the President that "domestic steel producers' capacity utilization has not stabilized for an extended period of time at or above { } 80 percent," and "{c}apacity utilization in the aluminum industry has improved, but it is still below the target capacity utilization that the Secretary recommended in his report." *Id.* at 5282.

65.    Commerce did not conduct a new investigation under the Section 232 statute, which states that the "Secretary shall immediately provide notice to the Secretary of Defense." 19 U.S.C. § 1862(b)(1)(B). The Secretary of Commerce did not consult with the Secretary of Defense as required by the statute. *Id.* § 1862(b)(2)(A)(i).

66.    Proclamation 9980 makes no assertion regarding the effect on the national security of the United States of a decline in any domestic industry producing one or more of the included derivative articles of steel or aluminum.

67.    The Secretary of Commerce did not "submit to the President a report on the findings of such investigation" concerning the effect of imports of derivative articles of steel and aluminum on the national security. *Id.* § 1862(b)(3)(A). Nor did the Secretary publish a report in the *Federal Register* in accordance with 19 U.S.C. § 1862(b)(3)(B).

68.    Instead, the President claimed the Secretary of Commerce informed him that "certain derivatives of steel articles have significantly increased since the imposition of the

tariffs and quotas" and the "net effect of the increase of imports of these derivatives has been to erode the customer base for U.S. producers of aluminum and steel and undermine the purpose of the Proclamations adjusting imports of aluminum and steel articles to remove the threatened impairment of the national security."  Proclamation 9980, 85 Fed. Reg. at 5282.

69.    The Secretary of Commerce followed none of the legal requirements and regulations codified in 15 C.F.R. part 705, which establish the important procedural requirements in the conduct of a Section 232 investigation and providing opportunities for public comment. Accordingly, the imposition of a 25 percent duty on imports of derivative steel products constitutes unlawful rulemaking.

70.    The President's issuance of Proclamation 9980, nearly two years after the window to take had lapsed, constitutes a clear violation of the statutory limitations under Section 232. Transpacific Steel LLC v. United States, No. 19-00009, 2019 WL 6124906, at *4 (Ct. Int'l Trade Nov. 15, 2019) ("the statute…cabins the President's power…procedurally, by setting the time in which to act.").

## STATEMENT OF CLAIMS

### COUNT I

71.    Plaintiffs incorporate by reference paragraphs 1 through 70 of this Complaint.

72.    Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations." U.S. CONST. art. 1, § 8.  Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862 vests the President with limited authority to regulate commerce with foreign nations and delineates the particular circumstances of when and how the President may take action to address imports that threaten to impair the national security of the United States.  *See* 19 U.S.C. § 1862.

73.    Section 232 delineates the procedures that the Secretary of Commerce and President must follow before the President may take any action with respect to address imports into the United States that threaten to impair the national security. The implementing regulations promulgated by Commerce establish the procedures the Secretary of Commerce will follow in conducting such an investigation. 19 C.F.R. part 705.

74.    The Department of Commerce is a federal agency governed by the APA.

75.    With respect to the Secretary of Commerce, Section 232 requires that he "immediately initiate and appropriate investigation," and "immediately provide notice to the Secretary of Defense"; that "in the course of {the} investigation" he shall "consult with the Secretary of Defense" and "appropriate officers of the United States"; if "appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice"; and, "no later than . . . 270 days after the date on which {the} investigation is initiated . . . ., submit to the President a report on the findings of such investigation," which "shall be published in the Federal Register" except for any portion that contains classified or proprietary information. 19 U.S.C. § 1682(b)(2)–(3).

76.    With respect to the President, Section 232 requires that "within 90 days after receiving a report" issued under Section 232 by the Secretary of Commerce, in which the Secretary of Commerce "finds that an article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security," the President shall "determine whether {he} concurs" and, if so, "determine the nature and duration of the action that . . . must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. § 1682(c)(1)(A). The

President must then implement any such action "no later than the date that is 15 days after the day on which the President determines to take action." Id. at § 1682(c)(1)(B).

77.    The President based his action in Proclamation 9980 on "information provided and "assessments" made by the Secretary of Commerce regarding an alleged threat to national security by reason of imports of derivative steel and aluminum articles, which purportedly "threaten to undermine the actions taken" by the President in Proclamations 9704 and 9705. 85 Fed. Reg. 5281-82. Those "assessments" recommended changes to the HTSUS codes to impose additional 25 percent duties on derivative steel products. Such assessments and subsequent action constitute a rulemaking under the APA. *See* 5 U.S.C. § 551(4)-(5).

78.    In providing such "assessments," the Secretary of Commerce violated its regulations because it, *inter alia:*

    a.  Failed to initiate an investigation pursuant to 15 C.F.R. § 705.3(a);

    b.  Failed to notify the Secretary of Defense of the initiation of an investigation pursuant to 15 C.F.R. § 705.3(b);

    c.  Failed to provide reasonable notice to interested and affected parties in derivative steel products of the opportunity to submit public comments and to appear at a hearing after the Secretary determined that such information was appropriate pursuant to 15 C.F.R. § 705.7(a);

    d.  Failed to comply with 15 C.F.R. § 705.8(a)(1) by neglecting to notify parties that the hearings and public comment period in 2017 on steel and aluminum products was the public notice of hearings on the potential for tariffs to be imposed on derivative products in a subsequent Proclamation, more than two years later; and

      e.    Failed to prepare a report and publish in the *Federal Register* pursuant to 15 C.F.R. § 705.10(c).

79.     The Secretary of Commerce's "assessments" regarding the alleged national security threat from derivative steel and aluminum articles, referred to throughout Proclamation 9980 as the legal basis for that Proclamation, bypassed the investigative and consultative steps required in the regulations.

80.     In bypassing these investigative and consultative steps, Commerce failed to provide interested parties with sufficient notice and opportunity to comment on the addition of the HTSUS codes subject to 25 percent duties in violation of the APA. *See* 5 U.S.C. § 553.

81.     Commerce's failure to provide a reasoned explanation for its "assessments" or an underlying report setting forth a definition of a derivative article and the numerical tests for measuring the volume increases in imports that triggered Defendants' action is arbitrary and capricious under the APA, and therefore, is not in accordance with law. *See* 5 U.S.C. § 706.

## COUNT II

82.     Plaintiffs incorporate by reference paragraphs 1 through 81 herein.

83.     Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations." U.S. CONST. art. 1, § 8. Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. § 1862 vests the President with limited authority to regulate commerce with foreign nations and delineates the particular circumstances of when and how the President may take action to address imports that threaten to impair the national security of the United States.

84.     Section 232 was amended in 1988 to place a time limit on the President's authority to take action against imports.  *See* Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, title I, § 1501(a), (b)(1), 102 Stat. 1107, 1257-60 (1988) (codified as amended at 19 U.S.C. § 1862).  The Section 232 statute was amended to require the President to act within 90 days of receipt of a report from the Secretary of Commerce, and to implement any such action within 15 days thereafter.

85.     The President issued Proclamation 9980 a full 653 days after the 90-day window closed for the President to determine what action to take following receipt of the Steel Report. Proclamation 9980 issued 638 days after the 15-day window to implement such action. Accordingly, the President failed to comply with the mandated procedures set forth in the Section 232 statute.

86.     Therefore, the President's action in Proclamation 9980 to impose duties on imports of new derivative steel and aluminum articles violates the Section 232 statute.

## COUNT III

87.     Plaintiffs incorporate by reference herein paragraphs 1 through 86 of this Complaint.

88.     The Fifth Amendment to the Constitution "imposes constraint on governmental decisions which deprive individuals of 'liberty' or 'property' interests."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

89.     Section 232 specifies that the Secretary of Commerce "shall…if it is appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice relevant to such investigation." 19 U.S.C. § 1862(b)(2)(A)(iii).  The Secretary of Commerce originally held hearings in the original Section

232 investigation of the underlying steel articles, and therefore, deemed such a notice and comment period appropriate, thus triggering the requirement that the Secretary of Commerce "shall" hold public hearings.

90.     Plaintiffs have a property interest in their imports of derivative steel products. The Federal Circuit has recognized the existence of a property interest for Fifth Amendment due process purposes for importers facing a deprivation of their property by the federal government. *See, e.g. NEC Corp. v. United States*, 151 F.3d 1361, 1370-1371 (Fed. Cir. 1998). The Supreme Court dictated that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 323 (internal quotation and citation omitted).

91.     Due process calls for such procedural protections where Plaintiffs were not given notice that imports on steel derivative products could be subject to additional duties under Section 232, given that the original investigation cited in Proclamation 9980 as the legal basis for the imposition of duties concluded more than two years ago.

92.     The failure to provide parties with notice and an opportunity to comment before issuing Proclamation 9980, and the resulting imposition of Section 232 tariffs on steel and aluminum products and deprivation of U.S. importers' property interests constitutes a violation of due process rights under the Fifth Amendment.

## **COUNT IV**

93.     Plaintiffs incorporate by reference herein paragraphs 1 through 92 of this Complaint.

94.     Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations." U.S. CONST. art. 1, § 8.  Section 232 of the Trade Expansion Act of 1962, as amended, 19 U.S.C. 1862 vests the President with limited authority to regulate commerce with foreign nations and delineates the particular circumstances of when and how the President may take action to address imports that threaten to impair the national security of the United States.  *See* 19 U.S.C. 1862.

95.     Section 232 is unconstitutional and not in accordance with law because it represents an over-delegation by Congress to the President of its legislative powers by failing to set forth an intelligible principle for the President to follow when implementing Section 232.

## COUNT V

96.     Plaintiffs incorporate by reference herein paragraphs 1 through 95 of this Complaint.

97.     The Secretary of Commerce violated Section 232 by making "assessment," "determinations," and providing other "information" to the President without following any of the statutory procedures for new action and by doing so outside the statutory time periods applicable to the 2017-2018 investigation conducted by the Secretary of Commerce that resulted in Proclamation 9705.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Enter judgment in favor of Plaintiffs and declare Proclamation 9980 unlawful and void;

(2) Permanently enjoin Defendants from implementing or further enforcing Proclamation 9980;

(3) Order CBP to refund Plaintiffs any duties collected pursuant to Proclamation 9980;

(4) Award Plaintiffs costs and any reasonable attorneys' fees and expenses; and

(5) Grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/*Lizbeth R. Levinson*

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

**FOX ROTHSCHILD LLP**
1030 15th Street, N.W.
Suite 380 East
Washington, D.C. 20005
Phone: (202) 461-3100
Fax: (202) 461-3102
E-mail: llevinson@foxrothschild.com
        rwisla@foxrothschild.com
        bpowell@foxrothschild.com

Dated: March 6, 2020